THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BENITO OLVERA-AGUILAR,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING [29] MOTION TO DISMISS**<br><br>Case No. 4:20-cr-00040-DN<br><br>District Judge David Nuffer |

Defendant Benito Olvera-Aguilar ("Olvera") filed a motion to dismiss (the "Motion")[1] his indictment on the grounds that the removal order underlying the charges against him is invalid. The United States opposes[2] the Motion. Because Olvera is barred from collaterally attacking the removal order in this case, the Motion is DENIED.

---

[1] Defendant's Motion to Dismiss ("Motion"), docket no. 29, filed Dec. 8, 2020.

[2] United States' Response to Defendant's Motion to Dismiss Indictment ("Response"), docket no. 34, filed Jan. 19, 2021.

TABLE OF CONTENTS

BACKGROUND ............................................................................................................... 2

DISCUSSION .................................................................................................................... 5

    (1) Olvera exhausted his administrative remedies by filing a timely appeal with the BIA. 7

    (2) Olvera fails to show he was deprived of the opportunity for judicial review due to his attorney's ineffective assistance of counsel. ............................................................. 8

    (3) Olvera fails to establish that the Removal Order was fundamentally unfair and that he was prejudiced by the unfairness. ....................................................................... 10

        (A) The denial of Olvera's request for a continuance did not render the Removal Hearing fundamentally unfair and did not prejudice him. ........................ 11

        (B) The Immigration Judge adequately questioned Olvera about potential relief from removal. .................................................................................... 11

        (C) Olvera fails to show that his attorney's deficient representation made his Removal Hearing fundamentally unfair and prejudiced him. ................... 14

CONCLUSION ............................................................................................................... 17

ORDER ........................................................................................................................... 17

## BACKGROUND

Olvera was born in Mexico in 1957.[3] He first entered the United States in August of 1998 on a non-immigrant visa and returned to Mexico before the visa expired.[4] Olvera again entered the United States on a non-immigrant visa in January of 2000, but this time he remained in the United States past the visa's expiration.[5] In August 2001, Olvera was arrested and convicted in

---

[3] Motion, Exhibit B, Olvera Affidavit ("Affidavit") ¶ 1 at 1, docket no. 29-3, filed Dec. 8, 2020; Response, Exhibit 1, Form I-213 ("Ex. 1") at 1, docket no. 34-1, filed Jan. 19, 2021.

[4] Motion at 4; Motion, Exhibit C, Removal Proceedings Transcript ("Hearing Transcript") at 6:3–5.

[5] Motion at 4–5; Hearing Transcript at 6:25–7:2; Response at 2.

Saint George, Utah for Driving under the Influence of Alcohol,[6] and was subsequently transferred to the custody of Immigration and Customs Enforcement ("ICE").[7] ICE gave Olvera a Notice to Appear for removal proceedings.[8] Olvera appeared *pro se* before an Immigration Judge on September 5, 2001.[9] The Immigration Judge continued the hearing *sua sponte* to give Olvera time to find an attorney.[10] On October 16, 2001, Olvera again appeared *pro se* at a second hearing (the "Removal Hearing") with the Immigration Judge.[11] At the Removal Hearing, Olvera requested a continuance for additional time to find an attorney, but the Immigration Judge denied his request,[12] saying Olvera had already received a six-week continuance to get an attorney, had failed to do so, and that Olvera didn't have any relief except voluntary departure.[13] The Immigration Judge asked Olvera about his qualifications for asylum:

> Q. And did you ever file an application for asylum in the United States?
> A. No.
> Q. Do you fear persecution on the basis of your race, your religion, your nationality, your membership in a particular social group or your political opinion if you return to Mexico?
> A. No.
> Q. Do you fear torture at the hands of the government of Mexico if you return?
> A. No.[14]

And again, before making his ruling, the Immigration Judge asked one more time:

> Q. And again, you don't attend [*sic*] to file asylum based relief?
> A. Correct.
> Q. You don't fear torture at the hands of the government of Mexico?

---

[6] Ex. 1.

[7] Motion at 5; Motion, Exhibit D, Notice to Appear ("Ex. D"), docket no. 29-5, filed Dec. 8, 2020; Response at 3.

[8] Motion at 5; Ex. D; Response at 3.

[9] Motion at 5; Hearing Transcript at 1; Response at 3.

[10] Motion at 5; Hearing Transcript at 4; Response at 3.

[11] Motion at 5; Hearing Transcript at 5; Response at 4.

[12] Motion at 5–6; Hearing Transcript at 9; Response at 6.

[13] Hearing Transcript at 9:13–21.

[14] *Id*. at 7:11–20.

A. No.[15]

The Immigration Judge granted Olvera post-conclusion voluntary departure, subject to posting a departure bond and filing a timely appeal with the Board of Immigration Appeals ("BIA").[16] The Immigration Judge ordered Olvera's removal from the United States to Mexico if he failed to comply with the voluntary departure requirements ("Removal Order").[17]

Olvera timely appealed the Immigration Judge's decision to the BIA.[18] Olvera's attorney failed to file a brief in support of his appeal[19] and the BIA affirmed the Immigration Judge's decision on January 8, 2003.[20] The BIA's decision also granted Olvera an additional thirty (30) days from the date of the order ("New Deadline") to depart voluntarily.[21] Before the New Deadline, Olvera filed a petition for review and stay of deportation with the Ninth Circuit.[22] The Ninth Circuit granted Olvera's motion to stay removal and extended the time to file the administrative record and briefs.[23] Olvera's attorney again failed to file a brief for the appeal, and the Ninth Circuit dismissed the appeal for the procedural defect on December 3, 2003.[24] Three and a half months passed, and on March 25, 2004, well over two years after the Immigration Judge entered Olvera's Removal Order, Olvera was deported.[25]

---

[15] Hearing Transcript at 15:5–10; Motion at 5–6; Response at 5–7.

[16] Hearing Transcript at 15–16.

[17] Motion, Exhibit E ("Ex. E"), docket no. 29-6, filed Dec. 8, 2020.

[18] Motion, Exhibit F ("Ex. F"), docket no. 29-7, filed Dec. 8, 2020; Motion at 6; Response at 7.

[19] Motion at 6; Response at 8.

[20] Motion, Exhibit G ("Ex. G"), docket no. 29-8, filed Dec. 8, 2020; Motion at 6; Response at 8.

[21] Ex. G; Response at 8.

[22] Motion, Exhibit H, docket no. 29-9, filed Dec. 8, 2020; Motion at 6; Response at 8.

[23] Response, Exhibit 8, docket no. 34-9, filed Jan. 19, 2021.

[24] Motion, Exhibit I, docket no. 29-10, filed Dec. 8, 2020; Motion at 6; Response at 8.

[25] Response, Exhibit 9, docket no. 34-10, filed Jan. 19, 2021.

Olvera re-entered the United States again and encountered ICE agents in July 2009.[26] He was interviewed and told immigration officials that he had no fear of persecution or torture if he were removed from the United States.[27] His Removal Order was re-instated[28] and he was deported again on October 13, 2009.[29]

Olvera re-entered the United States once more and encountered ICE agents in St. George, Utah on February 21, 2020.[30] The United States filed a one-count information against Olvera under 8 U.S.C. § 1326 for reentry of a previously removed alien.[31] Olvera was again interviewed by ICE and he again told the immigration officer that he does not fear persecution or torture if he is removed to Mexico.[32] Olvera entered a plea of not guilty on March 9, 2020.[33] Olvera filed his Motion to Dismiss on December 8, 2020,[34] the United States filed its response to Olvera's Motion on January 19, 2021 ("Response"),[35] and Olvera filed a reply on February 5, 2020 ("Reply").[36] In his Motion, Olvera challenges the validity of the Removal Order.

## DISCUSSION

Olvera argues that: (1) he never received meaningful judicial review of his immigration proceeding due to his attorney's ineffective assistance of counsel;[37] and (2) the Removal Order

---

[26] Response at 8–9; Response, Exhibit 10 ("Ex. 10"), docket no. 34-11, filed Jan. 19, 2021.

[27] Response at 9; Ex. 10 at 3; Response, Exhibit 11 at 3, docket no. 34-12, filed Jan. 19, 2021.

[28] Response, Exhibit 12, docket no. 34-13, filed Jan. 19, 2021.

[29] Response at 9; Response, Exhibit 13, docket no. 34-14, filed Jan. 19, 2021.

[30] Response at 9; Information ("Information"), docket no. 1, filed Feb. 27, 2020.

[31] Information.

[32] Response at 9; Response, Exhibit 14 at 3, docket no. 34-15, filed Jan. 19, 2021.

[33] Docket no. 10, entered Mar. 9, 2020.

[34] Motion.

[35] Response.

[36] Defendant's Reply in Support of Defendant's Motion to Dismiss ("Reply"), docket no. 37, filed Feb. 5, 2021.

[37] Motion at 10–15.

was fundamentally unfair because (A) Olvera's attorney's performance was deficient and (B) the Immigration Judge violated Olvera's procedural rights by denying Olvera's request for a continuance and failing to "adequately canvass Defendant" about his asylum claim.[38]

"When the government prosecutes a noncitizen for illegal reentry, it typically must prove two things: (1) that the noncitizen left the United States with an outstanding order of removal against him and (2) that afterward, the noncitizen entered, tried to enter, or was found in the United States."[39] "When the government offers a previous removal order as evidence of the first element, the Fifth Amendment protects the noncitizen's right to challenge that order, even years after the time for appeal has passed and the order has become final."[40]

Although the government has the burden of proving beyond a reasonable doubt all elements of the charges against Olvera, there is a rebuttable presumption that the order of removal in the immigration proceeding was valid.[41] To overcome this presumption, Olvera has the burden of proving that: (1) he "exhausted any administrative remedies that may have been available to seek relief against the order"; (2) the proceeding in "which the order was issued improperly deprived [him] of the opportunity for judicial review"; *and* (3) "entry of the order was fundamentally unfair."[42] The Supreme Court recently resolved a circuit split concerning whether an alien may be excused from satisfying any of the three prongs.[43] The Supreme Court said "[t]he requirements [of § 1326(d)] are connected by the conjunctive "and," meaning

---

[38] Motion at 15–27.

[39] *United States v. Almanza-Vigil*, 912 F.3d 1310, 1316 (10th Cir. 2019).

[40] *Id*.

[41] *United States v. Adame-Orozco*, 607 F.3d 647, 651 (10th Cir. 2010).

[42] 8 U.S.C. § 1326(d).

[43] *United States v. Palomar-Santiago*, 141 S. Ct. 1615 (2021).

defendants must meet all three."[44] The Court explicitly overruled the Ninth Circuit's rule that excused noncitizens from meeting the first two procedural requirements.[45] So, if Olvera fails any one of the prongs, he is barred from his collateral attack.

Olvera cannot rebut the presumption of the order's validity because he fails the second and third prongs.

### (1) Olvera exhausted his administrative remedies by filing a timely appeal with the BIA.

To exhaust administrative remedies, an alien must file a timely appeal with the BIA.[46] Olvera has met this requirement, despite the United States' argument to the contrary.[47] The United States argues that *United States v. Ferman*, an unpublished Tenth Circuit decision, stands for the proposition that Olvera failed to exhaust administrative remedies because he failed to file a motion to reopen his removal proceedings for his ineffective assistance of counsel claim.[48] This is an incorrect reading of *Ferman*. In *Ferman*, the Tenth Circuit ruled that Ferman failed to exhaust his administrative remedies when he waived his right to appeal the immigration judge's removal order.[49] The Tenth Circuit also discussed other potential administrative remedies Ferman *may* have pursued to exhaust his administrative remedies, but the court did not state that

---

[44] *Id*. at 1620–21.

[45] *Id*. at 1621.

[46] *See* United States v. Flores, 817 F. App'x 558 (10th Cir. 2020) (unpublished); *see also Adame-Orozco*, 607 F.3d at 648, 652 (Adame-Orozco "appealed his deportation order to the Board of Immigration Appeals" and "his challenge fails at the second step of § 1326(d)").

[47] Response at 11–17.

[48] Response at 11–17. The United States also argues that Olvera failed to file a motion to reopen his removal proceedings as required under *Matter of Lozada,* 19 I. & N. Dec. 637, 637 (BIA 1988), but *Matter of Lozada* addresses appeal requirements for ineffective assistance of counsel claims with the BIA, not collateral attacks brought by noncitizens under 8 U.S.C. § 1326(d).

[49] *United States v. Ferman*, 811 F. App'x 490 (10th Cir. 2020) (unpublished).

exhaustion requires a petitioner to pursue *each listed* potential administrative remedy.[50] The Tenth Circuit has held that filing a timely appeal with the BIA is sufficient to exhaust an alien's administrative remedies, and Olvera meets this requirement.[51]

### (2) Olvera fails to show he was deprived of the opportunity for judicial review due to his attorney's ineffective assistance of counsel.

"[W]hen an administrative removal proceeding plays a critical role in the subsequent imposition of a criminal sanction, the proceeding must be conducted in accordance with due process and 'there must be *some* meaningful review of the administrative proceeding.'"[52] Defendants will be "deprived of the opportunity to judicially challenge [their] deportation order" if they are "not adequately informed of [their] right to appeal."[53]

To show that Olvera was deprived of the opportunity for judicial review, he may only "refer[] to the proceedings at which the order was issued" and "must limit [his] attack to the argument that those proceedings deprived him of judicial review of the deportation order itself."[54] Olvera argues that because his attorney did not file a brief in his appeal, the BIA dismissed his appeal without an opinion, depriving him of judicial review.[55] This is incorrect. First, the BIA did not summarily dismiss Olvera's appeal, even though the BIA could have done so.[56] Instead, the BIA affirmed the Immigration Judge's ruling without opinion because:

---

[50] *Id.* at 493 (holding that "because Ferman failed to exhaust his administrative remedies, we need not reach his remaining arguments seeking to collaterally challenge his removal order under § 1326(d).").

[51] *See supra* n. 46.

[52] *United States v. Rivera-Nevarez*, 418 F.3d 1104, 1108 (10th Cir. 2005) (quoting *United States v. Mendoza-Lopez*, 481 U.S. 828, 838 (1987)).

[53] *Id*.

[54] *Adame-Orozco*, 607 F.3d at 652 (internal quotation marks and citation omitted).

[55] Motion at 10–15.

[56] "A single Board member or panel may summarily dismiss any appeal . . . in any case in which: the party concerned indicates . . . that he or she will file a brief or statement in support of the appeal and, thereafter, does not file such brief or statement . . ." 8 C.F.R. § 1003.1(d)(2)(i)(E).

8

> . . . the Board member determine[d] that the result reached in the decision under review was correct; that any errors in the decision under review were harmless or nonmaterial; and that
> (A) The issues on appeal [were] squarely controlled by existing Board or federal court precedent and d[id] not involve the application of precedent to a novel factual situation; or
> (B) The factual and legal issues raised on appeal are not so substantial that the case warrants the issuance of a written opinion in the case.[57]

The BIA reviewed the Immigration Judge's opinion and decision and affirmed it.[58] In Olvera's removal hearing, the Immigration Judge clearly discussed Olvera's options with him, asked him whether he would apply for asylum, and followed up a second time to make sure Olvera did not intend to apply for asylum. The transcript shows the Immigration Judge carefully considered Olvera's options and found no factual basis to support any form of relief other than voluntary removal.[59]

The reasons for Olvera's appeal as listed in the Notice of Appeal appear to come from a template. It says:

> Respondents [*sic*] contends [*sic*] that he provided clear, convincing and credible evidence to establish that he qualified for a grant of asylum and withholding of removal. It is Respondent's contention that the Immigration Judge erred in denying said relief . . .[60]

This language is not applicable to Olvera, because he did not discuss a claim for asylum or withholding of removal with the Immigration Judge. Olvera stated that he overstayed his visa to continue working in the United States and said he was not going to make an asylum claim. The BIA had no details about an asylum claim because Olvera never attempted to make such a claim. The BIA reviewed what evidence was available to the Immigration Judge and affirmed his

---

[57] 8 C.F.R. § 1003.1(e)(4).

[58] Ex. G.

[59] Hearing Transcript at 11–12.

[60] Ex. F.

findings based on the record. "The right to judicial review does not establish a right to an error-free immigration hearing."[61] "It grants a right to appeal if the immigration judge errs in construing the law or facts of the case."[62]

The BIA found no errors, and so affirmed. Olvera's right to meaningful review of the proceeding does not require additional review by the Ninth Circuit. Because Olvera received judicial review of his removal proceedings by the BIA, he fails the second prong.

### (3) Olvera fails to establish that the Removal Order was fundamentally unfair and that he was prejudiced by the unfairness.

For Olvera to establish that entry of the Removal Order was fundamentally unfair, he must show that entry of the order violated his due process rights *and* resulted in prejudice to him.[63] "When facing deportation ... aliens are entitled to procedural due process, which provides an opportunity to be heard at a meaningful time and in a meaningful manner . . . and [they are] entitled to nothing more."[64]

"[T]o establish the ineffective assistance of counsel in the context of a deportation hearing, an alien must establish that his or her counsel's performance was deficient to the point that it impinged the 'fundamental fairness' of the hearing,"[65] and "the alien must establish deficient representation and 'prejudice' or 'substantial prejudice' arising from this deficient representation."[66] And to establish prejudice, "the noncitizen must establish a reasonable likelihood that, but for the complained-of error, he would have avoided removal."[67]

---

[61] *Rivera-Nevarez*, 418 F.3d at 1109.

[62] *Id*.

[63] *See United States v. Aguirre-Tello*, 353 F.3d 1199, 1204 (10th Cir. 2004).

[64] *Id*. at 1204–05 (citations omitted).

[65] *Mejia Rodriguez v. Reno*, 178 F.3d 1139, 1146 (11th Cir. 1999) (citation omitted).

[66] *Id*. (citation omitted).

[67] *Almanza-Vigil*, 912 F.3d at 1323 (citation omitted); *see also Aguirre-Tello,* 353 F.3d at 1209.

**(A) The denial of Olvera's request for a continuance did not render the Removal Hearing fundamentally unfair and did not prejudice him.**

Olvera argues that the Immigration Judge violated his due process rights by denying his request for a continuance. This is incorrect. "An Immigration Judge may grant a motion for continuance only 'for good cause shown,' within his sound discretion."[68] "[A]n Immigration Judge's 'decision denying [a] motion for continuance will not be reversed unless the alien establishes that the denial caused him actual prejudice and harm and materially affected the outcome of his case.'"[69]

The Immigration Judge had already continued Olvera's hearing to give him time to get an attorney, and the Immigration Judge determined that Olvera didn't have any relief available to him except voluntary departure. Olvera argues that the Immigration Judge found him ineligible for relief because he had no attorney to properly develop his case, but Olvera does not suggest what additional facts would have afforded him relief at the time of his Removal Hearing, other than his asylum claim that he now raises, over twenty years after his Removal Hearing.[70]

Olvera has failed to show actual prejudice materially affecting the outcome of his case due to the Immigration Judge's denial of his request for a second continuance.

**(B) The Immigration Judge adequately questioned Olvera about potential relief from removal.**

Olvera, with an immigration history spanning over twenty years, provides an Affidavit with his Motion alleging the following facts for the first time: Prior to Olvera's first entry into the United States, Olvera lived in Netzahualcoyotl[71] and worked for the Department of

---

[68] *In Re Villarreal-Zuniga*, 23 I. & N. Dec. 886, 891 (BIA 2006) (citations omitted).

[69] *Id*. (quoting *Matter of Sibrun,* 18 I. & N. Dec. 354, 356–57 (BIA 1983)).

[70] Olvera also did not raise an asylum claim during his subsequent encounters with ICE in 2009 and most recently in 2021.

[71] Affidavit ¶ 2 at 1.

Agriculture.[72] He was "a member of the Labor Union of Agriculture and Livestock"[73] and he "paid membership dues, assisted meetings [*sic*], and participated in marches when necessary."[74] Olvera believed one of the union leaders "was very corrupt and was known to misuse the membership dues that were designated for the union members."[75] When Olvera complained about the union leader's misuse of dues at a union meeting, he began to receive death threats.[76] "The union leader pressured [him] into recanting and wouldn't leave [him] alone and [he] was scared for [his] life."[77] Olvera also "had many encounters with criminals" while living in Mexico.[78] He was robbed at gun point;[79] pick-pocketed on the metro;[80] and beaten,[81] extorted,[82] and robbed by the police.[83]

Olvera now alleges that these experiences are what prompted Olvera to visit his brother in the United States over twenty years ago,[84] in direct contradiction to his statement at his Removal Hearing where he said he left Mexico to come to the United States "to visit my brother and he convinced me to remain here in the United States working."[85]

---

[72] *Id.* ¶ 9 at 3.
[73] *Id.*
[74] *Id.* ¶ 10 at 3.
[75] *Id.* ¶ 11 at 3.
[76] *Id.*
[77] *Id.*
[78] *Id.* ¶ 4 at 1.
[79] *Id.*
[80] *Id.* ¶ 5 at 2.
[81] *Id.* ¶¶ 6–8 at 2–3.
[82] *Id.* ¶ 7 at 2.
[83] *Id.* ¶ 6 at 2.
[84] *Id.* ¶ 3 at 1.
[85] Hearing Transcript at 7:9–10.

Olvera argues that at his Removal Hearing, the Immigration Judge "fail[ed] to adequately canvass Defendant,"[86] so Olvera did not understand the questions about persecution and torture and failed to raise an asylum or CAT claim. This argument is inconsistent with the transcript for the Removal Hearing. The transcript shows that the Immigration Judge asked Olvera not once, but twice, whether he intended to file for asylum and whether he feared persecution or torture if he were removed to Mexico. Olvera said no both times. The transcript also shows that Olvera was not shy about asking questions during the Removal Hearing. Olvera asked the Immigration Judge if he could consult with an attorney,[87] he asked how to file and pay for an appeal,[88] and he asked how to pay the bond so he could be released pending his appeal.[89] Olvera did not ask any clarifying questions about a potential asylum claim, but he clearly was capable of doing so. The record shows that the Immigration Judge adequately questioned Olvera, and Olvera responded in the negative, not due to a lack of understanding, but because he didn't have a claim for asylum. Notably, Olvera has never filed for asylum and has never requested asylum. Even now, he does not request asylum, but argues that he may have had an asylum claim over 20 years ago. He not only denied having any fear of persecution or torture if removed to Mexico in his Removal Hearing, but also when he was interviewed by ICE in 2009 and more recently in 2021. Olvera also fails to provide any evidence other than his self-serving Affidavit for his newly raised asylum claim.

---

[86] Motion at 19.

[87] Hearing Transcript at 9:12.

[88] *Id*. at 11:1–11.

[89] *Id*. at 12:2–18.

The Immigration Judge adequately questioned Olvera about a potential asylum claim and Olvera did not have a claim to be reviewed. There is no "reasonable likelihood" that Olvera would have obtained relief based on a non-existent claim.

### (C) Olvera fails to show that his attorney's deficient representation made his Removal Hearing fundamentally unfair and prejudiced him.

Olvera argues that because his attorney never filed a supporting brief of his appeal to the BIA and failed to brief the Ninth Circuit appeal, that Olvera was deported and denied relief that was available to him, making his Removal Hearing fundamentally unfair. For Olvera's argument to succeed, he must show there was a reasonable likelihood that, but for his attorney's failure, he would have avoided removal. Olvera argues that he "has viable claims for asylum, withholding [(or restriction)] of removal, and protection under the Convention against Torture ("CAT").[90]

As discussed above, Olvera never provided facts alleging an asylum claim during his Removal Hearing or in his appeals, so we assess the facts he provides in his Affidavit for proof of asylum-related relief.

"To be eligible for asylum, an alien must show that [the alien] has suffered past persecution or has 'a well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'"[91] "Persecution is the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive and requires more than just restrictions or threats to life and liberty."[92]

"To obtain restriction on removal, the alien must demonstrate that [the alien's] 'life or freedom would be threatened in [the proposed country of removal] because of [the alien's] race,

---

[90] Motion at 22.

[91] *Tulengkey v. Gonzales*, 425 F.3d 1277, 1280 (10th Cir. 2005) (citations omitted).

[92] *Chaib v. Ashcroft*, 397 F.3d 1273, 1277 (10th Cir. 2005) (internal quotation marks and citations omitted).

religion, nationality, membership in a particular social group, or political opinion.'"[93] "The restriction statute is satisfied by a showing that 'it is more likely than not that the alien would be subject to persecution on one of the specified grounds' upon returning to [the alien's] country of origin."[94] And to obtain relief under CAT, an alien must show that "it is more likely than not that he or she would be tortured if removed to that country" and "that the persecution at issue would be so severe as to rise to the level of torture, but he or she need not show that it would be on account of a protected classification."[95]

Olvera argues that he was persecuted in the past either based on his opposition to public corruption (political opinion), or his membership in a union. The relevant instances he raises in his Affidavit can only be the abuse he suffered at the hands of the police and the harassment he suffered from the union leader, because getting robbed and pick-pocketed by criminals does not constitute persecution.[96] Olvera says the police "believe they are immune and so arrogant they can do anything to the citizenry without having to be accountable."[97] Olvera does not allege the police targeted him based on his membership of any of the enumerated groups and so cannot be the basis for an asylum claim. Olvera's assertions about his membership in the union and the purported harassment he suffered at the hands of the union leader are also insufficient bases for asylum. Olvera was not harassed because of his membership in a social or political group (the union), but because of his criticism of the union leader, which Olvera argues "may be an

---

[93] *Tulengkey*, 425 F.3d at 1280 (citations omitted).

[94] *Id.* (citations omitted).

[95] *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004) (citations omitted).

[96] *See Gormley v. Ashcroft*, 364 F.3d 1172, 1177 (9th Cir. 2004) ("Random, isolated criminal acts perpetrated by anonymous thieves do not establish persecution."); *see also Tulengkey*, 425 F.3d at 1277 (finding that an instance of robbery and fondling did not constitute persecution); *see also Lie v. Ashcroft*, 396 F.3d 530, 536 (3d Cir. 2005) ("[T]wo isolated criminal acts, perpetrated by unknown assailants, which resulted only in the theft of some personal property and a minor injury, is not sufficiently severe to be considered persecution.")

[97] Affidavit ¶ 6 at 2.

expression of political opinion."[98] For his criticism to be considered a political opinion, the criticism must have been "directed toward a governing institution" and not "against individuals whose corruption was aberrational."[99] Olvera's criticism was against the union leader specifically, so it does not qualify as a political opinion and is not a basis for asylum.

Olvera has also failed to provide any evidence of a well-founded fear of future persecution if he is returned to Mexico. And, Olvera has not even asserted, let alone provided any evidence, that he will be tortured if he is removed to Mexico. Olvera fails to show a reasonable likelihood that, even if his attorney had presented Olvera's Affidavit with his BIA or Ninth Circuit appeal, he would have been granted asylum, withholding of removal, or CAT relief.

Finally, Olvera argues that he was eligible for post-conclusion voluntary departure, but because of his attorney's incompetence, his eligibility expired during the course of his appeals, and so he could no longer depart voluntarily.[100] However, Olvera was informed by the Immigration Judge that after the BIA issued its decision regarding his appeal, he would have a minimum of thirty days to voluntarily depart.[101] Olvera does not contest that he received the BIA's decision, which confirms that he had 30 days from the date of the decision to voluntarily depart, which was February 7, 2003.[102] Instead of departing by February 7, 2003, he stayed in the United States for more than a year after his voluntary departure date expired and was

---

[98] Motion at 24.

[99] *Hayrapetyan v. Mukasey*, 534 F.3d 1330, 1337 (10th Cir. 2008) (citation omitted).

[100] Reply at 31.

[101] Ex. E.

[102] Ex. G. Olvera says he was not aware that his attorney did not file a supporting brief in his BIA appeal, or that she had not filed a brief for his Ninth Circuit appeal. Affidavit ¶ 14 at 4. However, he does not assert that he was not notified of the result of his BIA appeal, which he must have received, because he hired the same attorney to file a second appeal with the Ninth Circuit.

deported in March 2004. Olvera was aware of the deadline and chose not to comply. Therefore, the expiration of the deadline for him to voluntarily depart and his subsequent forced removal was not due to his attorney's ineffective assistance, but his own decision to remain in the United States past the deadline.

## CONCLUSION

Olvera received meaningful review of his Removal Hearing by the BIA and has failed to show fundamental unfairness at his Removal Hearing. Because Olvera fails the second and third prongs of 8 U.S.C. § 1326(d), his collateral attack is barred and his Motion must be denied.

## ORDER

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss[103] is DENIED.

Signed July 6, 2021.

BY THE COURT

_____
David Nuffer
United States District Judge

---

[103] Docket no. 29, filed Dec. 8, 2020.